# IN THE UNITED STATE DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| INTERNATIONAL FIDELITY INSURANCE COMPANY<br>1111 Raymond Boulevard<br>Newark, NJ 07102<br><br>*Plaintiff,*<br><br>v.<br><br>EAGLE INDUSTRIAL PAINTING, LLC<br>Attn: Steve Zoumberakis<br>3215 Magnolia Road NW<br>Magnolia, Ohio 44643<br><br>and<br><br>STEVE ZOUMBERAKIS<br>1311 Chantilly Circle NE<br>Canton, Ohio 44721<br><br>and<br><br>ANGIE ZOUMBERAKIS<br>1311 Chantilly Circle NE<br>Canton, Ohio 44721<br><br>*Defendants.* | CASE No.: _____<br><br>Judge: _____<br><br><br><br>**COMPLAINT**<br><br>**(Jury Demand Endorsed Hereon)** |

Plaintiff, International Fidelity Insurance Company ("IFIC") for its Complaint against Defendants, Eagle Industrial Painting, LLC ("Eagle"), Steve Zoumberakis ("Mr. Zoumberakis"), and Angie Zoumberakis ("Mrs. Zoumberakis") (sometimes collectively referred to as the "Defendants"), alleges and states as follows:

## NATURE OF ACTION

1. IFIC seeks to recover losses arising out of its surety relationship with Eagle. Eagle

and Mr. and Mrs. Zoumberakis guaranteed payment of any and all losses incurred in connection with the same under the terms of a certain indemnity agreement discussed and defined below. As the Defendants have not satisfied their obligations to IFIC under the indemnity agreement, IFIC is bringing this action to recover the net paid losses incurred in connection with its surety obligations related to Eagle.

2. Relevant to this matter, IFIC is a surety that provides performance and payment bonds for construction projects.

3. Eagle is a commercial paint and coating company that focuses its business on painting for Department of Transportation projects throughout the country.

4. Mr. Zoumberakis is the owner and president of Eagle.

5. The Defendants, Mr. and Mrs. Zoumberakis, are married.

## JURISDICTION AND VENUE

6. IFIC is a corporation organized and existing under the laws of the State of New Jersey, with its principal place of business in North Carolina.

7. Eagle is a limited liability company organized under the laws of Ohio. On information and belief, all of its members are citizens of Ohio. Eagle's principal place of business is in Carroll County, Ohio.

8. Mr. Zoumberakis and Mrs. Zoumberakis are individuals residing in Stark County, Ohio. Upon information and believe, Mr. and Mrs. Zoumberakis are citizens of Ohio.

9. Upon information and belief, Mr. Zoumberakis and Mrs. Zoumberakis are members of Eagle.

10. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a).

11. This Court has personal jurisdiction over Eagle because its principal place of business is in Ohio.

12. This Court has personal jurisdiction over Mr. and Mrs. Zoumberakis because they are Ohio citizens.

13. Venue is proper under 28 U.S.C. § 1391 because this is a judicial district in which each of the Defendants reside.

## FACTS COMMON TO ALL CLAIMS

14. Eagle contracted with the Washington State Department of Transportation ("WSDOT") on a project commonly known as Contract 9344, a portion of SR 20, MP 41.75 to MP 42.14, Deception Pass and Canoe Pass Bridges Painting and Special Repair, F.A. No. NHPP-0020(198), Island and Skagit Counties, Washington (the "Bonded Project").

15. IFIC wrote one payment and performance bond for Eagle dated January 23, 2019. The bond number was 0749903 and the bond amount was $13,998,005 (the "Bond"). The Bond was written for the benefit of WSDOT to guarantee Eagle's performance and payment obligations under the contract for the Bonded Project. A copy of the Bond is attached as Exhibit A and is incorporated herein as if fully rewritten.

16. As consideration for the Bond, the Defendants executed and delivered a copy of the Indemnity Agreement, dated July 26, 2018. A copy of the Indemnity Agreement is attached as Exhibit B and is incorporated herein as if fully rewritten.

17. IFIC relied on the Indemnity Agreement in issuing the Bond.

18. The Indemnity Agreement expressly states:

SECOND: The Contractor and Indemnitors shall exonerate, indemnify, and keep indemnified the Surety from and against any and all liability for loses and/or expenses of whatsoever kind or nature (including, but not limited to, interest, court costs and the cost of services rendered by counsel, investigators, accountants, engineers or other consultants, whether consisting of in-house personnel or third party providers) and from and against any and all such losses and/or expenses which the Surety may sustain and incur: (1) By reason of having executed or procured the execution of the Bonds; (2) By reason of the failure of the Contractor or Indemnitors to perform or comply with the covenants and conditions of this Agreement, or (3) In enforcing any of the covenants and conditions of this Agreement. The Contractor and Indemnitors shall deposit with the Surety on demand an amount of money or other collateral security acceptable to the Surety, as soon as liability exists or is asserted against the Surety, whether or not the Surety shall have made any payment therefore, equivalent to such amount that the Surety, in its sole judgment, shall deem sufficient to protect it from loss. The Surety shall have the right to use the deposit, or any portion thereof, in payment or settlement of any liability, loss or expense for which the Contractor and Indemnitors would be obligated to indemnify the Surety under the provisions of this Agreement. If for any reason the Surety deems it necessary to demand an additional amount of collateral security to cover any possible additional liability or loss, the Contractor and Indemnitors shall deposit with the surety, immediately upon the Surety's demand, an additional amount of collateral security equal to such demand. The Surety shall have no obligation to invest or to provide a return on any such deposits.

The Surety may sell or realize upon any and all such collateral security, at public or private sale, with or without notice to the Contractor and Indemnitors, or by any other method permitted or applicable by law. In the event of any payment by the Surety the Contractor and Indemnitors further agree that in any accounting between the Surety and the Contractor, or between the Surety and the Indemnitors, or either or both of them, the Surety shall be entitled to charge for any and all disbursements made by it in good faith in and about the matters herein contemplated by this Agreement under the belief that it is or was liable for the sums and amounts so disbursed, or that it was necessary or expedient to make such disbursements, whether or not such liability, necessity or expediency existed. The vouchers or other evidence of any such payment(s) made by the Surety shall be prima facie evidence of the fact and amount of the liability to the Surety, and of the Surety's good faith in making the payment(s). "Good Faith," as used in this paragraph and elsewhere in this Agreement, shall mean honesty in fact and the absence of willful misfeasance or malfeasance. Neither

>>negligence nor gross negligence shall be deemed the absence of good faith.

*See* Indemnity Agreement at p. 2.

19. IFIC never received any claims on the Bond; but, in June 2020, Mr. Zoumberakis informed IFIC that Eagle was out of funds to complete the job and sought interim financing from IFIC. IFIC agreed to provide the funding requested by the Defendants.

20. On or about June 24, 2020, the Parties entered into a Memorandum of Understanding ("MOU"), with IFIC on one hand and Eagle, Mr. Zoumberakis, and Mrs. Zoumberakis on the other hand, as indemnitors. A copy of the MOU is attached as Exhibit C and is incorporated herein as if fully rewritten.

21. In the MOU, the Defendants acknowledge and reaffirmed that each of them was obligated, jointly and severally, to indemnify IFIC for the amount of any payment IFIC made on behalf of the Indemnitors. Moreover, the Defendants acknowledged that Eagle was unable to complete the Bonded Project or pay claims for labor and materials furnished in connection with the Bonded Project without IFIC's assistance. Further, Eagle sought IFIC's assistance in paying those claims.

22. Pursuant to the terms of the MOU, IFIC financed Eagle in the total amount of $3,577,180. To induce IFIC to enter into the MOU, the Defendants acknowledged that they had defaulted on the Indemnity Agreement and acknowledged that the Defendants' request for financial assistance triggered IFIC's takeover rights in the Indemnity Agreement, which granted IFIC the sole discretion to possession of the works and funds under the WSDOT contract to complete or arrange for the completion of Eagle's work on the Bonded Project.

23. Specifically, the MOU provides:

> **5. Acknowledgement of Surety's Takeover Rights.** Indemnitors acknowledge that this Request for Financial Assistance triggers Surety's takeover rights as set forth in Paragraph Seventh, entitled "Takeover" of the Indemnity Agreement, and that Surety will have the right, at its option and in its sole discretion, and is hereby authorized, with or without exercising any other right or option conferred upon it by law or in the terms of the Indemnity Agreement, to take possession of any part or all of the work and all funds under the Bonded Contract covered by the Bond on the Bonded Project and to complete or arrange for the completion of the same and pay any beneficiary, and that the Indemnitors will promptly and upon demand pay to Surety all losses and expenses so incurred including interest and consultants' and attorneys' fees and expenses.

24. Following the MOU's execution and IFIC's financial backing, Eagle continued to struggle. Eagle again failed to fulfill its obligations under the WSDOT contract on the Bonded Project. As a result, IFIC exercised its right to arrange for the completion of the WSDOT contract by another contractor, pursuant to the terms of the Indemnity Agreement and the MOU.

25. IFIC published a request for prospective bidders to complete Eagle's work on the Bonded Project. Nine proposals were submitted. The lowest bidder was Cekra, who bid $11,628,142.64. The highest bidder's bid was $19,485,415.64.

26. On or about January 27, 2021, IFIC entered into a contract with Cekra to complete the work (the "Cekra Contract"). A copy of the Cekra Contract is attached as Exhibit D and is incorporated herein as if fully rewritten.

27. In connection with the MOU, the Defendants provided mortgages on three properties as collateral. One of those properties has been redeemed, and IFIC will seek foreclosure on the other two properties in separate actions. The proceeds from these properties will not satisfy the Defendants' obligations to IFIC.

28. IFIC has demanded that the Defendants perform in accordance of the terms of the Indemnity Agreement and the MOU and exonerate, indemnify, and hold IFIC harmless from and against losses and potential losses and expenses resulting from the default and breach of the bonded

6

obligations of IFIC relating to the Bonded Project. For example, IFIC sent a demand letter to the Defendants on November 19, 2020, which demanded that the Defendants meet their obligations by depositing $5,687,597.64 with IFIC by December 4, 2020. A copy of the November 19, 2020 letter is attached as Exhibit E and is incorporated herein as if fully rewritten. The Defendants failed to deposit any funds with IFIC in response to that demand.

29. The Defendants have failed and refused to perform their obligations pursuant to the terms and conditions of the Indemnity Agreement and MOU.

30. As a result of the Defendants' material breach of the Indemnity Agreement and MOU, IFIC has incurred projected losses and expenses in an amount exceeding $4,910,800.38[1] (the "Bonded Loss Claim Reserve"). IFIC has reason to believe that additional obligations will be incurred and that IFIC will incur additional losses and expenses. IFIC therefore reserves its right to amend the amount of damages it is seeking.

31. IFIC has satisfied all of its obligations under the Indemnity Agreement and MOU.

## COUNT I
## Breach of Contract

32. IFIC restates, reiterates, and realleges each and every allegation contained in the preceding paragraphs as though fully set forth herein.

33. IFIC has performed all of its obligations under the Bond and MOU.

34. The Defendants are obligated under the Indemnity Agreement to provide sufficient collateral to IFIC upon demand.

35. To that end, IFIC sent a demand letter to the Defendants on November 19, 2020 demanding that the Defendants meet their obligations by depositing $5,687,597.64 with IFIC by

---

[1] This figure represents the total of IFIC's (1) net paid losses to date, and (ii) current reserve for the Bonded Project. *See* Exhibit E and is incorporated herein as if fully rewritten.

December 4, 2020. *See* Exhibit E. The Defendants failed to deposit any funds with IFIC in response to that demand.

36. The Defendants' failure to pay IFIC all amounts owed and to deposit the collateral demanded by IFIC is a material breach of the Indemnity Agreement and MOU.

37. The Defendants are jointly and severally liable to exonerate, indemnify, and hold harmless IFIC from and against the Bonded Loss Claim Reserve and any other amounts that IFIC is required to expend in relation to the Bonded Project.

38. As a result of Defendants' breach of the Indemnity Agreement and MOU, the Defendants are jointly and severally liable to IFIC for damages, which are currently in excess of $4,910,800.38. IFIC has reason to believe that additional obligations will be incurred and that IFIC will incur additional losses and expenses. IFIC therefore reserves its right to amend the amount of damages it is seeking.

39. As a result of the Defendants' breach of the Indemnity Agreement, it was necessary for IFIC to engage counsel to enforce IFIC's rights under the Indemnity Agreement. The engagement of counsel has cause IFIC to incur legal fees and expenses for which the Defendants are jointly and severally, and individually liable to IFIC pursuant to the terms of the Indemnity Agreement.

## COUNT II
### Indemnification

40. IFIC restates, reiterates, and realleges each and every allegation contained in the preceding paragraphs as though fully set forth herein.

41. The Defendants are obligated to indemnify IFIC from and against any and all liability for losses of whatsoever kind arising from or relating to the Bonded Project under the terms of the Indemnity Agreement, which is attached here to as Exhibit B and is incorporated herein as if fully rewritten.

42. The Defendants are in material breach of their indemnity obligations under the Indemnity Agreement.

43. As a result of the Defendant's breach of the Indemnity Agreement, IFIC has incurred and will continue to incur losses in an amount in excess of $4,910,800.38 for which the Defendants are jointly and severally, and individually, liable.

**NOW, WHEREFORE,** the Plaintiff International Fidelity Insurance Company, prays for and demands judgment as follows:

1. Judgment on Count I of its Complaint against the Defendants, jointly and severally, and individually, in an amount exceeding $4,910,800.38, to be proven at trial, plus interest, costs, and legal fees;

2. Judgment on Count II of its Complaint against the Defendants, jointly and severally, and individually, in an amount exceeding $4,910,800.38, to be proven at trial, plus interest, costs, and legal fees; and

3. For any and all other relief that the Court may deem just, equitable, and proper.

Respectfully submitted,

*/s/ Royce R. Remington*
Royce R. Remington (0040408)
rrr@hahnlaw.com
Kelly A. Kosek (0075623)
kkosek@hahnlaw.com
Alayna K. Bridgett (0100297)
abridgett@hahnlaw.com
Hahn Loeser & Parks LLP
200 Public Square, Suite 2800
Cleveland, Ohio 44114
Tel:  216.621.0150
Fax:  216.241.2824

*Counsel for Plaintiff*
*International Fidelity Insurance Company*

## **JURY DEMAND**

Plaintiff International Fidelity Insurance Company demands a trial by jury of the maximum number of jurors allowed, on all issues so triable.

        Respectfully Submitted,

        */s/ Royce R. Remington*
        *Attorney for International Fidelity Insurance Company*